## LANDERS v. FORBES.

(Supreme Court, Appellate Division, Third Department.　March 5, 1902.)

PARENT AND CHILD—CONTRACT FOR BOARD—EVIDENCE—SUFFICIENCY.

A son lived with his adopted parents, and worked the farm on shares until his father's death. Thereafter he leased the farm from his mother on shares. They continued to live together, and the produce not to be divided supplied the table. The mother owned all the furniture and was the housekeeper during the lease,—about 12 years,—and her services were worth more than her board. A servant in the house a few weeks, some six years before the trial, testified to conversations with the mother showing that her board was to be paid for. The son, after the mother's death, declared that he would file no claim for board. During the lease the son made payments in money to the mother, though the former needed money and the latter did not. *Held*, that the evidence did not show a contract requiring the mother to pay for board.

Appeal from judgment on report of referee.

Action by Charles O. Landers against William H. Forbes, as executor of the estate of Nancy Landers, deceased. From a judgment on the report of a referee in favor of plaintiff, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

William C. Mills, for appellant.
Horton D. Wright, for respondent.

KELLOGG, J. The plaintiff presented an itemized bill to the executor of the estate of Nancy Landers aggregating $2,901.54, which was rejected. The deceased left personal estate worth $3,000 or $3,400. She was the widow of one Garrett V. Landers, who died in 1888, leaving a farm of 50 acres to his widow for life, then to the plaintiff in fee. So far as the record discloses, the plaintiff was the adopted son of Garrett and Nancy Landers. He always lived with them, called them father and mother, always lived on this farm of 50 acres, and this farm was always the home of Garrett and Nancy Landers. The plaintiff lived on the farm for 44 years, and was never married. In the lifetime of Garrett Landers he worked the farm on shares from the time he was 21 until Mr. Landers' death,—some 10 or 12 years,—and lived with the others at the common house which was the dwelling house on the farm. It does not appear that his father and mother by adoption paid him for board, or that he paid them for board. After the death of Garrett Landers, he, by an arrangement with his adopted mother, continued to work the farm on shares. The lease seems to have been in writing. By the terms of the lease, as stated by witness Forbes, who drew it up, the parties were to share equally in the farm produce, and each was to pay one-half the taxes, and the mother, Nancy Landers, was to have her home on the old place as she always had. Nothing was said about board of either. They continued to live together as they had always done. From all the testimony it seems to be beyond question that what was raised upon the farm without division supplied the table. Plaintiff took eggs and butter and such produce to the village store, and brought back

such articles for table use as were needed, and Nancy Landers did the same. There is no evidence that the table was supplied from plaintiff's share. The mother owned all the furniture and table equipment in the house. She, without a servant, was housekeeper, and did for the most part the household work, and prepared the food for herself and plaintiff and for the farm hands when any were employed; and the witnesses Hiram Harris and Elmira Harris, the nearest neighbors and persons in position to know what Nancy Landers did, say that her services were worth more than her board, and on this point no other witness definitely speaks, though all the witnesses who give any of their observations say that Nancy Landers did the housework when she was not ill, and she is shown to have been ill, during the 12 years from 1888 to the time of her decease, only some 15 weeks. Only for that length of time was she so far ill as to require the attention of a nurse. She was 83 years old when she died, but seems to have been gifted with such an unusual temper and bodily health as to successfully resist the ordinary effects of old age. It appears that the claimant, without objection, and without regard to the provisions of section 829 of the Code of Civil Procedure, was permitted to testify to every personal transaction had with the deceased, and yet it is impossible to read the testimony and not be entirely convinced that there was never any expectation on the part of the claimant to be paid for board of his mother by adoption; nor was there ever any intention on her part to pay for board otherwise than by services as housekeeper such as she was able to render, and did render, during these 12 years. There is no testimony in the case which remotely suggests a claim for board was contemplated by either mother or son in the lifetime of the mother, except the testimony of witness Catherine Hutchins, a servant who worked in the household a few weeks some six years before her testimony was given. The witness undertakes to give her recollection of a conversation which did not in any way interest her. Taking into account the lapse of time, the manner in which the witness testifies, the fact that her memory fails to recall anything but such fragments of the conversation as might benefit plaintiff, the surroundings, the occasion which it appears prompted the petulant expressions of the mother what is claimed to have been said, seems so improbable that very little weight should be given to the recollection of this witness. On the other hand, we have the testimony of Frances Wetherbee giving a conversation with plaintiff soon after the mother's decease, in which he disclaims all intention of making claim for board, and when plaintiff was asked as witness if he had not made this statement he did not deny having done so. We have the further fact in the case that both plaintiff and the mother were very particular to make prompt settlement and payment in all matters of business between them; that plaintiff made frequent payments of money to his mother; that the mother was in no need of money and plaintiff had none to spare; the further fact that after six years all claim for board became stale and uncollectible; the further fact that the table was supplied for the most part, if not wholly, from the undivided product of the farm or the proceeds of such product. Plaintiff's witness Catherine Hutchins says that plaintiff would take eggs and butter and bring back tea, sugar,

and ordinary groceries. Witness Burr, the storekeeper, says "during the past ten or twelve years she came to the store about once in two weeks, and brought butter and eggs, which she exchanged for groceries sometimes, and would exchange for duebills for the balance some other times; I thought she traded at our store more than Charles Landers did"; the further fact that she was the owner of the cooking utensils, the table appointments, and all the furniture in the house but one bed; the further fact that she was mistress in the house, and sole housekeeper, and doing without help all the household work, the same as she always had done, with no servant to do this work for her. This altogether makes the suggestion that she was a boarder in her own home, and liable to be charged as such by her adopted son, is much too absurd for belief. The item, therefore, allowed by the referee for six years' board at $3 per week, amounting to $936, was error. There is no evidence to support this finding. The item for fire insurance allowed for premiums paid during the six years next prior to the decease of the testatrix at $29.58 is too large. The referee evidently overlooked the testimony of the plaintiff that the insurance was joint, and at most Nancy Landers was liable for only one-half that sum. The item for taxes paid, which was allowed by the referee, for the said six years, at $90, at $15 a year, is also too large. This is the total tax for these years. The lease called for payment of only one-half the taxes by the deceased. By the evidence of the collector of taxes she paid the whole tax in the years 1896 and 1898. If plaintiff paid for two years there would be only two other years to be divided, and the item at most would not exceed $15 chargeable to her estate. The item for board of nurses, allowed at $54.86, seems to be too large. The proof discloses not to exceed 20 weeks board at $3 per week. This board was furnished from the food jointly owned, and was prepared by these so-called nurses. The item could not exceed $30 from this evidence. The allowance of $12 for twelve "trips" has no evidence to support the charge. This, among civilized people, is of the nature of service without pay. The item allowed at $38, for extra work performed by claimant when his mother was sick, has no proof to support it.

The judgment should be reversed, the referee discharged, and a new trial granted, with costs of this appeal to appellant to abide the event. All concur.